UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 22-CR-00286 (JMC) |
| | : | |
| DENNIS GAMARRA | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its Memorandum in Aid of Sentencing as to Defendant Dennis Gamarra (hereinafter, the "defendant"). For the reasons herein, the United States requests that the Court sentence the defendant to a two-year period of probation, comprised of six months of home confinement, and payment of the applicable amount of restitution.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On August 24, 2022, the defendant was charged by way of an Information with one count of violating 18 U.S.C. § 641 (Theft of Government Property) in connection with his former employment as a contractor at two separate government agencies from 2017 through 2021. The defendant had previously entered into a plea agreement with the United States, in which, in exchange for entering a plea of guilty to the one-count Information, he would not be criminally prosecuted further for the conduct set forth in the Statement of Offense, among other provisions. *See* ECF No. 7.

The factual basis for the plea was as follows:

Defendant Gamarra was employed as a contractor working at the United States Department of Commerce ("DOC") within the International Trade Administration ("ITA") beginning in October 2014, at an office in Washington, D.C. While there, Defendant Gamarra largely worked to provide information technology ("IT") support to the ITA and through his employment had access to certain government-furnished equipment, including Microsoft Surface tablet devices belonging to DOC and issued to DOC employees. During his tenure,

Defendant Gamarra stole at least one Microsoft Surface Tablet, worth USD $1,370, removing it from ITA's offices, advertising it for sale online through his eBay account, and ultimately re-selling it to another individual through eBay. Defendant did so knowingly, with the intent to deprive the owner, in this case, DOC, of the right to use that property.

Starting in November 2019, Defendant Gamarra began working as a contractor for the Library of Congress ("LOC"), at an office in Washington, D.C. While at LOC, he similarly worked to provide IT support services. Like his role at DOC, Defendant Gamarra had access to government-furnished equipment, including Dell Laptops that were the property of LOC and that were issued to LOC employees. While at LOC, Defendant Gamarra removed at least 29 separate Dell laptops from LOC that he knew to belong to LOC, cumulatively worth a total of approximately USD $55,590, advertised them on eBay, and ultimately resold them to different customers through that account. Defendant took these laptops knowingly, with the intent to deprive the owner, in this case, LOC, of the right to use them.

*See* ECF No. 8.

## II.     DISCUSSION OF APPLICATION OF U.S. SENTENCING GUIDELINES AND 3553(a) FACTORS

### A.     Generally Applicable Legal Principles

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). See *United States v. Gall*, 128 S. Ct. 586, 596 (2007). The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

    (4) the kinds of sentence and the sentencing range established for –
      (A) the applicable category of offense committed by
      the applicable category of defendant as set forth in
      the guidelines –
        (i) issued by the Sentencing Commission ...;
        and
        (ii) that, . . . are in effect on the date
        the defendant is sentenced; ...

    (5) any pertinent policy statement –
      (A) issued by the Sentencing Commission ... and
      (B) that, . . . is in effect on the date the defendant is
      sentenced.

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

  B.  <u>Computation of U.S. Sentencing Guidelines Range</u>

Turning to 3553(a)(4)(A), the government concurs with the assessment of the United States Probation Office for the District of Columbia (hereinafter "U.S. Probation") regarding the total offense level applicable in this case, the defendant's criminal history score, and the resultant range under the U.S. Sentencing Guidelines ("USSG").

    1.  *Total Offense Level*

The government agrees that the Total Offense Level for the defendant is 10. In light of the nature of the charge, the relevant provision of the USSG is §2B1.1, which provides for a base offense level of 6. Because the loss amount is between $40,000 and $90,000, six levels are added pursuant to USSG §2B1.1(b)(1)(D). *See* PSR at ¶21. Given Defendant's acceptance of responsibility in this case, there should be a two-level reduction under USSG §3E1.1(a), bringing his Total Offense Level to 10. *Id.* at 28.

*2. Criminal History*

The government agrees that the Defendant has a total criminal history score of zero with no juvenile or adult convictions. *Id.* at ¶¶ 29-31. This results in a criminal history category of I.

*3. USSG Range*

Given that the Total Offense Level is 10 and the Defendant's criminal history score is zero, he guideline imprisonment range is six months to 12 months. *Id.* at ¶65. Since the applicable guideline range is in Zone B, the minimum term may be satisfied by (1) a sentence of imprisonment; (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in USSG §5C1.1(e), provided that at least one month is satisfied by imprisonment; or (3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in USSG §5C1.1(e). USSG §5C1.1(c). *Id.* at ¶66.

**III. ALLOCUTION**

The government believes that a sentence of two years' probation, which includes six months of home confinement, is an appropriate sentence, along with payment of restitution in the amount of $56,960 to the relevant victims.

A. <u>Analysis of the Sentencing Factors Under Section 3553(a)</u>

After calculating the applicable Guidelines range, the Court should next consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007). An application of the 3553(a) factors supports the government's recommended sentence.

1. *Nature and Seriousness of the Offense*

The defendant engaged in a years' long scheme at not one, but two, separate government agencies, in which he stole government-furnished equipment, namely, various digital devices, sold the stolen items on his personal eBay account, and recouped the proceeds and deposited them into his personal bank account. His conduct was sustained, brazen, and, until his scheme was uncovered, profitable.

By way of background, from approximately November 2019 through July 2020, the defendant was employed as a service technician by MIL Corporation, a company that contracted with the Library of Congress ("LOC") for the service of government computers. In March 2020, an individual who had purchased a Dell laptop from an eBay user later confirmed to be Gamarra contacted CDWG, a government contractor which handles procurement of laptops for LOC, to attempt to transfer the warranty from CDWG to himself. CDWG then forwarded the request to the Office of the Chief Information Officer at LOC given that it appeared that the eBay purchaser had received government property. Thereinafter, LOC began conducting an internal investigation and confirmed that the laptop in question was indeed government property, that it had been left by a contractor who had abruptly resigned in late 2019, and that the individual IT contractor who had picked it up, along with two other laptops, in January 2020 was the defendant. LOC's Office of Inspector General ("LOC-OIG") reviewed the eBay account on which the initial laptop was put up for sale and saw that one of the other laptops that records showed Gamarra picked up was also for sale. In total, the investigation revealed that from November 2019 through June 2020, a total of 55 laptops that matched the make and model of the laptops that LOC was issuing to its own employees and contractors at the time had been put up for sale by this account. Of those 55 laptops, 30 listed a service tag number and 25 did not. Of the 30 that had identifiable service tag numbers,

29 belonged to the LOC. Pursuant to legal process, PayPal produced records showing that Gamarra received payment for the sale of the 29 laptops belonging to the LOC. The agency determined the value of those 29 laptops to be $55,590.

Agents with LOC-OIG eventually interviewed the defendant. The defendant confirmed that his eBay username was "pichurris2003" and said that he had the eBay account for the last 5-6 years. The defendant stated that he stole the laptops because he was having financial difficulties. He added that he took the LOC laptops from the building by hand out of the front entrance on Independence Avenue SE, sometimes using a laptop bag to conceal the stolen devices. Agents also indicated that upon reviewing eBay records, they saw that there were several Microsoft Surface tablets and laptops that the defendant had been selling on eBay. The defendant denied taking the Microsoft devices from any other government agency and that he only took laptops from LOC.

Unfortunately, this was not true. Indeed, as additional investigation was to show, the defendant had stolen other government furnished devices from his prior stint as a contractor for the Department of Commerce's International Trade Administration. The defendant had worked there from November 2014 through October 2019. Having been made aware of the defendant's misconduct at LOC, the Department of Commerce's Office of Inspector General ("DOC-OIG") began its own internal investigation and reviewed sales made by the "pichurrus2003" eBay account during Gamarra's employment as a contractor with DOC. It discovered that he sold 28 Microsoft Surface Pro tablets that matched the model numbers of DOC-issued Microsoft Surface Pro tablets to which Gamarra had access while in his position. In addition, DOC-OIG discovered dozens of other devices, the make and model of which suggested they belonged to DOC. DOC-OIG also reviewed Gamarra's official DOC email account and found that from at least October 2017 through

July 2018, Gamarra sent multiple emails from his government account to his personal email account. Several of those emails contained images depicting what appeared to be DOC property, including Microsoft Surface Pros, Dell laptops, and a Samsung hard drive. Most of the photos appear to have been taken on a wooden table within a residence, consistent with the usual style of photograph for items being advertised for sale on eBay. In at least one of the photos, a serial number was visible on the device which matched that of a device in DOC's inventory records.[1] The value of this device was $1,370. In other photos, the serial numbers were not completely visible and the eBay records did not contain this information, leaving DOC unable to verify whether these devices sold on eBay were in fact government property. In a voluntary interview with agents from DOC-OIG in January 2021, the defendant admitted that he stole an unspecified number of DOC-issued devices during his time as a contractor and sold them on platforms such as eBay and Craigslist. The defendant added that he only took DOC-issued devices that were being "surplussed," or removed from circulation due to damage, before ultimately repairing them and selling them. He was unable to recall the specifics of his scheme.

    2.    *History and Characteristics of the Defendant.*

Another factor that the Court must consider in fashioning an appropriate sentence is the history and characteristics of the defendant. To be sure, the defendant has no criminal history. The PSR paints a picture of an individual who emigrated to the United States at a young age, quickly acquired specialized skills related to information technology, and then proceeded to

---

[1] DOC-OIG reviewed DOC inventory records to determine whether the specific Microsoft Surface Pro (serial number 009730250353) could be located. DOC assigns each piece of equipment a "CD number," and places that number on a sticker on the equipment. DOC records indicate that the device was physically inventoried at DOC on March 29, 2019, even though it appears to have been sold on eBay by Gamarra two years earlier. When DOC-OIG located the device with the CD sticker that was supposed to correspond to that serial number, DOC-OIG found that the device was not a Microsoft Surface Pro i7 with the correct serial number, but rather a damaged older i5 model that had a different serial number, suggesting that someone deliberately applied the wrong CD sticker to the damaged i5 model in the hopes of concealing the theft of the newer, undamaged device.

maintain steady employment for decades while also raising his family in Virginia. Unfortunately, however, these various positive factors were insufficient to deter him from engaging in an apparently years long scheme to defraud the federal government by stealing government property and converting it for his personal benefit. The defendant did so over the course of two different stints while working for the federal government, undertook relatively few efforts to actually conceal his theft of government-furnished equipment, and then pocketed all the proceeds as pure profit.

> 3. *The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment; to afford Adequate Deterrence; and to Project the Public from Further Crimes of the Defendant*

In light of the foregoing, the government believes that a sentence of two years' probation, six months of home confinement, and payment of the restitution will accomplish the factors set forth in 3553(a)(2)(A)-(D), that is for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; afford adequate deterrence of criminal conduct; protect the public from further crimes of the defendant; and allow the defendant with training, treatment, and other type of care he may require. Abusing one's position as a government contractor to steal government-furnished equipment from the very agency you contracted with to support is a significant offense, one that is exacerbated by the fact that this was a years' long pattern of conduct, spanning stints with two separate government agencies. The defendant engaged in this conduct brazenly and would have continued doing so had it not been for a chance call made by one of his eBay purchasers which tipped LOC off to the fact that government equipment was being unlawfully resold online.

In addition to the seriousness of this offense, there is a great need for general deterrence in cases such as the defendant's. The government does not have the resources to investigate and

prosecute every contractor or employee who purloins government property for his or her personal benefit.  One of the primary mechanisms by which unscrupulous employees can be prevented from doing so and, the overall losses of the government agencies (and taxpayer) minimized, is through general deterrence.  General deterrence is a "crucial factor in sentencing decisions for economic . . . crimes." *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015).  The legislative history of section 3553 documents Congress' emphasis on the importance of general deterrence in white collar crime. *See* S. REP. 98-225, 76, 1984 U.S.C.C.A.N. 3182, 3259 (need to deter others is "particularly important in the area of white collar crime").  "Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (citations omitted).

The seriousness of the defendant's offense and the significant need for general deterrence in this case, however, must be balanced against the fact that the defendant has accepted responsibility at the earliest opportunity possible, retaining counsel, entering into a plea agreement with the United States, and then pleading guilty to a one count Information.  In addition, even before retaining counsel, defendant met with agents from the Offices of the Inspector General from each agency and gave voluntary statements admitting to misconduct (though at times not describing its full breadth).  Additionally, as noted above, the defendant has no criminal history and, but for this misconduct, appears to have been a productive member of his community.  The defendant is also likely to suffer significant collateral consequences of his entry of a plea of guilty in this case, including debarment from federal contracting, which will affect his financial livelihood.[2]

---

[2] The defendant has also agreed pursuant to the plea agreement not to seek employment in any form with the United States Government as a condition of his supervised release and probation.

In weighing these various factors under 3553(a), the government believes that its recommended sentence of two years' probation, six months of which must be comprised of home confinement, as well as payment of the restitution owed to the victims in this matter in the amount of $56,960, accomplishes the goals of 3553(a).

B.   The Defendant Should Be Required to Pay Restitution to the Victims

The crimes of Theft of Government Property are "offense[s] against property under" Title 18, and thus fall under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A. As a result, the Court must order that "the defendant make restitution to the victim of the offense[s]." 18 U.S.C. § 3663A(a)(1). Restitution is owed to the Library of Congress in the amount of $55,590 and $1,370 is owed to the Department of Commerce. The government will provide the Court with a chart that includes victim information at the sentencing hearing.

C.   The Defendant Should be Required to Pay a Forfeiture Money Judgment

"Criminal forfeiture is not an independent substantive offense, nor is it even an element of an offense. It is instead 'an aspect of punishment imposed following conviction of a substantive criminal offense.'" *United States v. Day*, 416 F. Supp. 2d 79, 84 (D.D.C. 2006) (quoting *Libretti v. United States*, 516 U.S. 29, 39 (U.S. 1995)), *aff'd in part on other grounds and rev'd in part on other grounds*, 524 F.3d 1361 (D.C. Cir. 2008). Criminal forfeiture may take the form of: (1) an *in personam* money judgment against the defendant; (2) forfeiture of specific assets; and (3) forfeiture of "substitute assets" if the directly forfeitable assets are unavailable. *United States v. Zorrilla-Echevarria*, 671 F.3d 1, 5-6 (1st Cir. 2011) (citation omitted). Federal Rule of Criminal Procedure 32.2 governs criminal forfeitures. Here, the government requests that the Court impose a forfeiture money judgment against the defendant.

As required by Rule 32.2(a) of the Federal Rules of Criminal Procedure, the government

provided notice to the defendant in the Information that it intended to seek a forfeiture money judgment against him as part of "any sentence in accordance with the applicable statute." Fed. R. Crim. P. 32.2(a). Specifically, the Information included a forfeiture allegation that provided notice to the defendant that upon conviction of Count One, the government would seek criminal forfeiture pursuant to 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p). *See* ECF No. 1. Pursuant to the terms of his plea, the defendant agreed to the forfeiture allegation set forth in the Information and agreed to the entry of a forfeiture money judgment in the amount of $56,590.

Because the government is asking for a forfeiture money judgment in this case, "the court must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A). Here, the defendant obtained a total of $56,960 in proceeds as the result of his theft from LOC and DOC. Therefore, the government requests that the Court impose a forfeiture money judgment in that amount since the proceeds are no longer available for seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p). A proposed Order of Forfeiture is attached hereto.

IV. **CONCLUSION**

For the reasons stated above, the government respectfully requests that the Court adopt the government's recommendation and impose a sentence of two years' probation, six months of which must be served in home confinement, as well as payment of $56,590 in restitution.

Respectfully submitted,

MATTHEW GRAVES
UNITED STATES ATTORNEY

By: */s/ Will Hart*
     Will Hart

                D.C. Bar No. 1029325
                Jeffrey Nestler
                D.C. Bar No. 978296 (Nestler)
                Assistant United States Attorneys
                United States Attorney's Office for D.C.
                601 D Street, N.W.,
                Washington, D.C. 20530
                Telephone:  (202)-730-5711 (Hart)
                                 (202)-252-7277 (Nestler)